## Attachment B to Affidavit of Special Agent Norden Dated April ___, 2021

### (Filed Under Seal)

### Property to be Seized

1.  The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 1512(c)(2) (obstruction of Congress); 111 (assaulting a federal agent); 231 (civil disorders), 371 (conspiracy); 372 (conspiracy to impede/assault federal agents); 641 (theft of government property); 1361 (destruction of government property); 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds); and Title 40 U.S.C. Section 5104(e)(2) (violent entry, disorderly conduct, and other offenses on capitol grounds) (the "Target Offenses") that have been committed by **LANGUERAND** and other identified and unidentified persons, as described in the search warrant affidavit; including, but not limited to:

    a.  Evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

    b.  Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

    c.  Evidence concerning awareness of the official proceeding that was to take place at Congress on or about January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

    d.  Evidence concerning efforts to disrupt the official proceeding that was to take place at Congress on or about January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

    e.  Evidence relating to a conspiracy to illegally enter and/or occupy the U.S. Capitol Building on or about January 6, 2021;

    f.  Evidence concerning the breach and unlawful entry of the U.S. Capitol, and any conspiracy or plan to do so, on or about January 6, 2021;

    g.  Evidence concerning the riot and/or civil disorder at the U.S. Capitol on or about January 6, 2021;

    h.  Evidence concerning the assaults of federal officers/agents and efforts to impede such federal officers/agents in the performance of their duties the U.S. Capitol on or about January 6, 2021;

    i.  Evidence concerning damage to, or theft of, property at the U.S. Capitol on or about January 6, 2021; to include but not limited to a metal pipe, approximately 3 feet in length, taken from a damaged barricade on the Capitol grounds.

    j.  Evidence of any conspiracy, planning, or preparation to commit those offenses;

k. Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

l. Evidence concerning materials, devices, or tools that were used to unlawfully enter the U.S. Capitol by deceit or by force, including weapons and elements used to breach the building or to counter efforts by law-enforcement, such as pepper spray or smoke grenades;

m. Evidence of communication devices, including closed circuit radios or walkie-talkies, that could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol;

n. Evidence of the state of mind of **LANGUERAND**, and/or other coconspirators, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

o. Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

2. Records and information that constitute evidence of identity, including but not limited to:

a. clothing worn by **LANGUERAND** during the conduct described above, to include a distinct red knit hat with black and white stripes across a portion of the top, a black face mask around his neck, plaid shirt and a black sweatshirt with the word "Georgia" in gold lettering.

b. clothing and other articles that reflect evidence of having participated in the unlawful activity at the U.S. Capitol, including evidence of pepper spray or other non-lethal crowd control remnants and items taken from inside or outside the U.S. Capitol, including any square framed metal pole as described in the Affidavit;

3. Records and information—including but not limited to documents, communications, emails, online postings, photographs, videos, calendars, itineraries, receipts, and financial statements—relating to:

a. Any records and/or evidence revealing **LANGUERAND**'s presence at the January 6, 2021 riot, or previous events related to the Presidential Election in November 2020;

b. Any physical records, such as receipts for travel, rental agreements for vehicles or lodging, which may serve to prove evidence of travel of to or from Washington D.C. in January of 2021;

c. **LANGUERAND** (and others') motive and intent for traveling to the U.S. Capitol on or about January 6, 2021; and

    d. **LANGUERAND** (and others') activities in and around Washington, D.C., specifically the U.S. Capitol, on or about January 6, 2021.

4. Digital devices used in the commission of, or to facilitate, the above described offenses, including, but not limited to, the seizure and search of the cellular telephone with the phone number of ▉▉▉▉▉▉▉ and any digital devices used in the commission of, or to facilitate, the above described offenses.

5. For any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Device(s)":

    a. evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

    b. evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

    d. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

    e. evidence of the times the Device(s) was used;

    f. passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

    g. documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

    h. records of or information about Internet Protocol addresses used by the Device(s);

    i. records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    j. the chargers, its contained SIM card, and any removable media therein.

For any Device(s) seized and searched pursuant to this warrant, the United States Government shall make three (3) copies of the data on such Device(s). The first copy shall be

maintained as the original copy and sealed from further inspection. The second copy shall be a copy that the United States Government can search. The third copy shall be a copy provided to the Defendant pursuant to any discovery obligations. After the three copies are made, the Device(s) themselves shall not be further searched absent supplemental authority from this Court or a court of competent jurisdiction.

Further, for any Device(s) seized and searched pursuant to this warrant, the United States Government shall perform any searches of the Device(s) themselves, or data extractions, within 60 days of the seizure of such Device(s). After 60 days, any further searches or data extractions of the Device(s) themselves will require supplemental authority from this Court or a court of competent jurisdiction. Requests for extensions of this 60 day limitation may be may be made for good cause shown.

For any Device(s) seized and searched pursuant to this warrant, the United States Government is authorized to search for and seize records dated November 3, 2020 to present.

As for biometric authority, during the execution of the search of the locations described in Attachment A, law enforcement personnel are also specifically authorized to obtain from **LANGUERAND** (but not any other individuals present at the time of execution of the warrant) the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the Device(s), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of:

(a) any of the Device(s) found at the locations described in Attachment A,

(b) where the Device(s) are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments,

for the purpose of attempting to unlock the Device(s)'s security features in order to search the contents as authorized by this warrant.

While attempting to unlock the device by use of the compelled display of biometric characteristics pursuant to this warrant, law enforcement is not authorized to demand that the aforementioned person(s) state or otherwise provide the password or identify the specific biometric characteristics (including the unique finger(s) or other physical features), that may be used to unlock or access the Device(s). Nor does the warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person(s) to state or otherwise provide that information. However, the voluntary disclosure of such information by the aforementioned person(s) is permitted. To avoid confusion on that point, if agents in executing the warrant ask any of the aforementioned person(s) for the password to any Device(s), or to identify which biometric characteristic (including the unique finger(s) or other physical features) unlocks any Device(s), the agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request.

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS (FaceTime)
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE


This  14  day of  April        , 2020
Florence, South Carolina


_____
The Honorable Thomas E. Rogers, III
UNITED STATES MAGISTRATE JUDGE